# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean M. Donahue,             :
          Appellant      :
                              :
         v.                  :    No. 1333 C.D. 2020
                              :    No. 1334 C.D. 2020
                              :    Submitted: June 17, 2022
City of Hazleton               :

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**PER CURIAM**                                     **FILED: June 2, 2023**

In these consolidated appeals, Sean M. Donahue (Requester), pro se, appeals from the December 14, 2020 Order of the Court of Common Pleas of Luzerne County (common pleas) granting in part and denying in part Requester's appeals from the Final Determinations of the Office of Open Records (OOR), OOR AP 2019-1120 (Appeal of the July Request) and OOR AP 2019-1542 (Appeal of August Request). These appeals related to two Right-to-Know Law[1] (RTKL) requests to the City of Hazleton (City) and the City's Police Department (Police Department) made, respectively, on July 5, 2019 (July Request), and August 6, 2019 (August Request).[2] In his Appeal of the July Request,[3] Requester argues common pleas erred by failing to address the OOR's Final Determination related to the July Request. In his Appeal

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] Common pleas disposed of the two appeals from the OOR Final Determinations in a single order from which Requester filed two separate appeals to this Court. This Court consolidated the appeals by order dated June 8, 2021.

[3] This Court assigned Docket No. 1334 C.D. 2020 to this appeal.

of the August Request,[4] Requester argues common pleas lacked jurisdiction to order redaction of certain records because unredacted copies of those records were produced in federal litigation, and common pleas erred in relying on affidavits that were insufficient to establish the public safety exception and not addressing all of the issues raised in his notices of appeal.[5]  Upon careful review, we affirm.

## I.    BACKGROUND

### A.  Appeal of the July Request

On July 5, 2019,[6] Requester sent the July Request via email to the Police Department's Chief of Police (Police Chief), requesting the following:

> RTK[L] Request I.  Please email to me copies of all documents in the possession of the [] Police Department that define the following[;]
>
> (1) Actions [that] could get a person shot by [Police Department].

---

[4] This Court assigned Docket No. 1333 C.D. 2020 to this appeal.

[5] Requester also asserts this Court has original jurisdiction and can issue a declaratory judgment in this matter pursuant to Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a), "because all police officers in Pennsylvania are sworn Pennsylvania officers, regardless of which municipality they work for," and under Section 761(b) and (c) of the Judicial Code, the Court can "issue a declaratory judgement [sic] that creates a new rule of law mandating full disclosure, under [the] RTKL, of" all records and documents related to the police's use of force, police tactics, and policy manuals regarding that use of force.  (Requester's Brief at 1.)  Contrary to Requester's assertion, this Court's original jurisdiction under Section 761(a) and (b) relates only to "officer[s]" of the "Commonwealth government," 42 Pa.C.S. § 761(a), (b), and does not include local police officers or departments, *see* Section 102 of the Judicial Code, 42 Pa.C.S. § 102 (excluding from the definition of Commonwealth government "any political subdivision, municipal or other local authority, or any officer . . . of any such political subdivision or local authority").  Further, Section 761(c) relevantly provides for original jurisdiction "in cases of mandamus and prohibition to courts of inferior jurisdiction . . . where such relief is ancillary to matters within its appellate jurisdiction." 42 Pa.C.S. § 761(c).  Requester's asserted ancillary original jurisdiction matter does not fall within the ambit of Section 761(c).

[6] Although Requester emailed the July Request on July 3, 2019, it was after hours and, therefore, the Police Department, and later the OOR, treated the request as being filed on July 5, 2019, the next business day.

(2) Actions [that] would get a person shot by [Police [Department].

(3) Actions by police that would render it legal for citizens to use lethal force against police.

(4) Actions by police [that] would obligate citizens to use lethal force against police.

RTK[L] Request II.  Please email me copies of all documents in the possession of the [Police Department] that define whether or not it would be legal or illegal for citizens to use lethal force against [Police Department] if the actions taken by police in [the] Lonmin Marikana massacre [sic].

Below is a link to the video of the event.

https://youtu.be/d1IBAAH4SzA

[RTKL Request] III.  Please provide your personal answers to the above questions, ex [sic] RTK[L] . . . .

(Original Record (O.R.), CP Docket No. 2019-13430, Item 15 Exhibit (Ex.) 1; Bates Number 65.[7])  The Police Department did not respond within five days of its receipt of the July Request and, therefore, it was deemed denied.  Section 901 of the RTKL, 65 P.S. § 67.901 ("If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied.").

Requester appealed the deemed denial to the OOR on July 15, 2019, arguing the requested records were public because police use of lethal force against the

---

[7] Requester did not file a reproduced record in this matter, but he attached to his brief the record from the OOR.  For ease, the Court will identify items using their Original Record item number and the Bates Number used in the attachments to Requester's brief.  The original record for CP-2019-13430 includes most of the records related to both appeals, while the original record for CP-2019-13311 contains only the records related to the Appeal of the August Request.  Thus, unless otherwise noted, references to the "Original Record" are to the record filed in CP-2019-13430.

public is an issue of public concern and it is crucial for the public to be able to access any policies regarding the use of such force. The Police Department filed two affidavits in response: one by its Open Records Officer (Records Officer) and one by the Police Chief. Both affidavits attested their review of the July Request reflected that the July Request was overly vague, was not submitted on a proper form, and Requester sought answers to questions, rather than documents.[8] Records Officer further attested the City did not possess documents responsive to the July Request, and Police Chief attested the Police Department operated within federal and state guidelines for criminal procedure. Requester responded the RTKL contains no requirement that a request be made on a particular form and the July Request clearly sought copies of published policies.

The OOR denied Requester's appeal and held the Police Department did not have to take any further action. Relevantly, the OOR held Requests I and II of the July Request required the Police Department to conduct legal research by locating applicable laws governing the use of force and apply them to hypothetical situations. (Final Determination for the Appeal of the July Request at 5-6 (citing *Askew v. Pa. Off. of the Governor*, 65 A.3d 989 (Pa. Cmwlth. 2013)).[9]) Accordingly, the OOR concluded the July Request was insufficiently specific, denied the appeal, and advised Requester that any appeal had to be filed with common pleas within 30 days.

Despite the OOR's direction, Requester filed a petition for review with this Court. The Police Department challenged this Court's jurisdiction because the appeal involved a request to a local, not state, agency. This Court agreed it lacked

---

[8] The Police Department's submissions to the OOR are found in Item 15 Exhibits 3-4 of the Original Record and at Bates Numbers 139-49.

[9] The Final Determination for the Appeal of the July Request is found at Item 15 Exhibit 9 of the Original Record and at Bates Numbers 58-64.

4

jurisdiction and, pursuant to Section 5103(a) of the Judicial Code, 42 Pa.C.S. § 5103(a), transferred the matter to common pleas for its review. *Donahue v. Hazleton City Police Dep't* (Pa. Cmwlth., No. 1051 C.D. 2019, filed Mar. 12, 2020). This Court transferred the record related to the Appeal of the July Request to common pleas.

## B. Appeal of the August Request

Requester submitted the August Request to the City on August 6, 2019,[10] which sought:

1) . . . [A] copy of the current tactics manual and policy that is used by the Hazleton Special Operations Group [(SOG)], as well as the one used at the time of my arrest on August 21, 2012.

2) . . . [A] copy of the current [] Police Department's policy that guides police officers as to when and how to use lethal force against a citizen, when and how to use lethal force against a fellow police officer and how to recognize when the use of lethal force by a citizen against a police officer is justified and also to recognize when a police officer must intervene on the side of a citizen to protect that citizen from another police officer.

3) . . . [A] copy of the policies that were in effect regarding the very same matters raised in request "2)" during the time of my arrest of August 21, 2012.

4) . . . [A] copy of the current policies, as well as the policies that were in effect at the time of my arrest on August 21, 2012[,] for the [SOG] regarding the same matters being raised in requests "1)" and "2)".

5) . . . [A] copy of ALL warrants that were issued against me during the three months leading to my arrest on August 21, 2012[,] and all warrants that were issued in relation to this case after my arrest,

_____

[10] Requester submitted the August Request on August 4, 2019, a Sunday; however, it was not received by Records Officer until August 6, 2019. (O.R. Item 10 Ex. A; Bates Number 221.)

5

regardless of which law enforcement agency was involved in those warrants.

6) . . . [D]ocumentation that clarifies how many federal agents and other personnel, including city agency personnel, ambulance, county, state, federal, etc. . . . entered my family's home and[/]or walked into, and[/]or onto, the property and[/]or, spoke to my neighbors during the night of the arrest on August 21, 2012.

7) . . . [C]opies of all warrants that were issued against me during the 12 months leading up to the arrest and since the arrest in which the [Police Department] were (1) involved and/or (2) aware of.

8) . . . [A] copy of the documentation that proves which [Police Department] officers identified themselves to my neighbors as federal agents the night of the arrest.

9) . . . [A] copy of the documentation that shows want [sic] how many other agencies had people enter my family's home during the night of the raid.

10) . . . [A] copy of all sneak and peak warrants, wiretap warrants, etc. and other documentation (1) that [Police Department] used to conduct surveillance of me and investigate me in the 6 months leading up to my arrest and in the time since my arrest; AND (2) documentation [sic] that full[y] discloses any and all such warrants and unwarranted surveillance activities that occurred during that same time frame that [Police Department] are aware of.

11) . . . [A] copy of the policies that were in effect at the time of my arrest, and the policies in effect now, to guide [Police Department] and the [Police Department SOG] in using temperature, i.e., hea[t] & cold, to get a person out of a home during an arrest.

12) . . . [A] complete copy of any and all documentation created by the Hazleton Fire Department and any other agency that documents the ALLEGED discovery of carbon monoxide fumes in my family's home on the night of my arrest of August 21, 2012.

(O.R. Item 10 Ex. A; Bates Number 219.) After invoking the 30-day extension provision of Section 902(b) of the RTKL, 65 P.S. § 67.902(b), the City issued a

6

response on September 11, 2019, agreeing to provide Requester with records related to paragraph 12.[11]   However, it asserted disclosure of records in response to paragraph 1 would threaten personal security and, therefore, were exempt from disclosure under Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii). Finally, the City stated paragraph 6 was not a request for a specific record and no records responsive to paragraphs 2 through 11 existed within the City's possession, custody, or control and were "covered under PA State Law." (City's Response at 1-2.)

Requester appealed to the OOR, challenging the partial denial and the reasons proffered by the City.  After the OOR invited the parties to supplement the record, the City provided a position statement and an affidavit from Records Officer, and argued the August Request was really discovery related to Requester's federal lawsuit against the City arising from his August 21, 2012 arrest.[12]   Requester responded that records responsive to paragraph 1 would not threaten personal security and records responsive to the other paragraphs existed.  Upon the OOR's request for additional evidence, the City submitted the affidavit of Detective Lieutenant William Gallagher (Detective Gallagher) regarding how disclosure of records responsive to paragraph one, including the SOG Manual, could lead to risks of personal security.[13]  Requester filed a supplemental position statement challenging Detective Gallagher's Affidavit.

---

[11] The City's response is found in Item 10 Exhibit A of the Original Record and Bates Numbers 222-24.

[12] Records Officer's Affidavit is found in Item 10 Exhibit F of the Original Record and Bates Numbers 341-43.

[13] Detective Gallagher's Affidavit is found in Item 10 Exhibit I of the Original Record and Bates Numbers 609-10.

After considering the position statements and affidavits, the OOR held the City had proven, through the Affidavits of Records Officer and Detective Gallagher, that disclosing records responsive to paragraph 1 was reasonably, likely to result in a substantial and demonstrable risk of physical harm to, or the personal security of individuals, specifically, members of the SOG Unit, thereby exempting the SOG Manual from disclosure under Section 708(b)(1)(ii) of the RTKL. (Final Determination for the Appeal of the August Request at 7-8.[14]) The OOR indicated that, per Detective Gallagher's Affidavit, the SOG Manual provides information about SOG's equipment and tactics, which would allow suspects to counter and neutralize those tactics and equipment. Allowing this, could result in "a very real" threat against SOG Unit members by "'providing a blue print to the public'" of the "'steps taken by law enforcement during a SOG Unit encounter'" and "'can directly cause harm to a SOG member's safety.'" (*Id.* at 7 (quoting Detective Gallagher's Affidavit).) Further, the OOR credited the "professional opinions of individuals assessing the risk of security and [would] not substitute its judgment for that of those with far more familiarity with the issues involving public safety. (*Id.* at 8 (citing *Pa. State Police v. Am. Civ. Liberties Union of Pa.* (Pa. Cmwlth., No. 1066 C.D. 2017, filed May 18, 2018)).[15]) Thus, the OOR held the SOG Manual was exempt from disclosure.

The OOR also held that paragraphs 5, 7, and 10, which sought warrants, were requests for judicial records, not records "of" the City, and were not disclosable

---

[14] The Final Determination for the Appeal of the August Request is Item 10 Exhibit K of the Original Record and found at Bates Numbers 202-11.

[15] Unreported panel decisions of this Court, while not precedential, may be cited for their persuasive authority pursuant to Pennsylvania Rule of Appellate Procedure 126(b)(1), Pa.R.A.P. 126(b)(1), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

under the RTKL. (*Id.* at 10 (citing *Phila. Dist. Att'y's Off. v. Stover*, 176 A.3d 1024 (Pa. Cmwlth. 2017)).) The OOR rejected the City's argument that paragraph 6 was a question and not a request for records, holding this paragraph sought documentation the City may have created or received regarding a particular event. As for the City's argument that there were no responsive records within its possession regarding the other paragraphs, the OOR held the City did not provide evidence reflecting it had searched for the records, and, therefore, failed to meet its burden of proving responsive records did not exist in its possession, custody, or control. For these reasons, the OOR denied Requester's appeal as to paragraphs 1, 5, 7, and 10, granted Requester's appeal as to records related to paragraphs 2-4, 6, 8-9, 11, and directed the City to provide those records to Requester within 30 days.[16] Requester appealed to common pleas.

### C. Appeals to Common Pleas

In the Petition for Review of the Appeal of the July Request, initially filed in this Court but transferred to common pleas, Requester asserted the OOR erred in denying the appeal because the OOR did not address all of the requests made in the July Request. He further argued the request did not require the Police Department to perform any legal research, but, rather, sought disclosure of the handbook the Police Department gives to its police officers. Requester asserts the handbook, and policies contained therein, exist because Requester overheard conversations between police officers regarding the existence of such handbooks. According to Requester, the Police Department has these policies but is refusing to release them to him because of the ongoing litigation Requester has against the City in federal court.

---

[16] The City did not file a cross-appeal.

In Requester's Petition for Review from the Appeal of the August Request, he argued the OOR erred in exempting the SOG Manual from disclosure because it is a public record, where the City already released the document in discovery in the federal lawsuit he filed against the City. Requester asserted such document should not be public for some citizens but exempt from disclosure for other citizens, and the City is not attempting to protect the police officers from harm, but seeks to protect itself from being held accountable for its actions. According to Requester, the City had not established the release of the requested records would result in physical harm to police officers. Requester further argued the OOR erred in finding that the records responsive to paragraphs 5, 7, and 10 were exempt because the request was not only for warrants and judicial records, but also for records in the City's possession and were disclosable.

Following oral argument, common pleas directed the City to produce a copy of its "Police Tactics Manual and Policy" for *in camera* review. (Common Pleas' Dec. 14, 2020 Order.[17]) The City provided common pleas with its "Standard Operating Procedure for the Hazleton [SOG]," the SOG Manual, for review. (*Id.*) After its *in camera* review of the SOG Manual, common pleas issued its December 14, 2020 Order, which was captioned with both of Requester's appeals from the OOR's Final Determinations. In that Order, common pleas granted Requester's "Petition" in part, denied it in part, and directed the City to produce specific parts of the SOG Manual with other parts to be redacted and not produced. (*Id.*) Thereafter, the City produced the SOG Manual to Requester with the relevant redactions made.

---

[17] Common Pleas' December 14, 2020 Order is Item 27 of the Original Record and Bates Numbers 2-5.

10

Requester filed two Notices of Appeal. In the notice addressing the Appeal of the July Request,[18] Requester relevantly argued common pleas did not address his appeal from the OOR's Final Determination related to the July Request. In the notice addressing the Appeal of the August Request,[19] Requester argued common pleas addressed only paragraph 1 of the August Request, leaving paragraphs 2-11 unaddressed. Requester further asserted common pleas lacked jurisdiction to order the redactions set forth in the December 14, 2020 Order because the document disclosed by the City appeared "to be the exact same document that [Requester] submitted to the OOR as part of" the Appeal of the August Request, which was provided, in unredacted format, during discovery in the federal litigation. (Notice of Appeal for the Appeal of the August Request at 3.) Requester contended that because the record has been disclosed without redaction, it is already a "public record at various federal dockets," and common pleas "cannot get the genie back into the bottle" by now ordering its redaction under the RTKL. (*Id.*) In both Notices of Appeal, Requester asserted full disclosure of the City's use of force policies is necessary to allow for meaningful public debate regarding such use of force, which is an important matter of public interest.

Common pleas issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), in response to Requester's appeals. Common pleas considered the two Notices of Appeal and concluded that the Notice of Appeal related to the Appeal of the August Request "substantively subsume[d]" the Notice of Appeal for Docket 13430. (Common pleas' 1925(a) opinion (1925(a) Op.) at 3.[20])

---

[18] This Notice of Appeal is Item 29 of the Original Record and Bates Numbers 29-32.

[19] This Notice of Appeal is Item 32 of the Original Record for Docket 13311 and Bates Numbers 161-66.

[20] The 1925(a) Opinion is Item S2 in the Supplemental Record for Docket 13430 and Bates Numbers 8-13.

11

Common pleas described Requester's substantive arguments as challenging: (1) common pleas' jurisdiction to order redaction of the record responsive to paragraph 1 due to the documents already having been disclosed in the federal litigation; and (2) common pleas' failure to address paragraphs 2 through 11 of the request.[21]

As to paragraph 1, common pleas explained it crafted its order following the *in camera* review of the provided SOG Manual and balanced the "competing interests between the right to public disclosure and the need to exempt sensitive public safety information." (*Id.*) In partially overruling the OOR's determination that all records responsive to paragraph 1 were exempt from disclosure under Section 708(b)(6)'s personal security exception, common pleas considered each element of that test. Ultimately, common pleas held the City had met its burden of proving that disclosure of certain parts of the records would threaten personal security. Common pleas agreed with the OOR's reliance on the affidavits of Records Officer and Detective Gallagher to show releasing the entire SOG Manual was reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of police officers. As for paragraphs 2 through 12 and the remainder of the OOR's Final Determination, common pleas indicated it agreed with the OOR's determinations as to paragraphs 2 through 11 and otherwise "declined to disturb the [OOR's] Final Determination regarding [Requester's] remaining [RTKL] Requests." (1925(a) Op. at 9-13.)

---

[21] Although Requester included paragraph 12 in the Notice of Appeal, the City provided responsive records to Requester. Therefore, both the OOR and common pleas found Requester's challenge moot.

## II.     DISCUSSION

Initially, the Court observes Requester's brief mainly asserts public policy reasons he believes favor the broad disclosure of the requested records without any redaction, primarily asserting the SOG should not be allowed to operate in secret.[22] (*See, e.g.*, Requester's Br. at 42-44.)  Requester seeks to have this Court review this matter "anew" and "create a new rule of law requiring full disclosure under [the] RTLK [sic] of all records and policies that are in any way related to police force capabilities, tactics and the policies that allow for force to be used based on executive, rather than judicial, interpretations of the law."  (*Id.* at 45.)

However, in reviewing common pleas' Order, "[o]ur standard of review in a [RTKL] case is whether an error of law was committed, constitutional rights were violated, or necessary findings of fact are supported by substantial evidence."  *Silver v. Borough of Wilkinsburg*, 58 A.3d 125, 127 n.2 (Pa. Cmwlth. 2012).  Thus, we do not consider these cases "anew," but review common pleas' determination for error.  Nor is it the judiciary's role to create new laws based on public policy, as such determinations are for the General Assembly.  *Commonwealth v. Torsilieri*, 232 A.3d 567, 583-84 (Pa. 2020) (stating courts should be cognizant of their respective role and "remain mindful that the wisdom of a public policy is one for the legislature" subject to constitutional limitation) (internal quotation marks and citation omitted).  Accordingly, the Court will consider Requester's arguments and requests for disclosure within the parameters of what the General Assembly has

---

[22] Requester's brief also contains numerous *ad hominem* attacks against, among others, the City, the Police Department, Police Chief, and common pleas, and arguments related to his federal litigation against the City.  Like Requester's public policy arguments, the Court will not consider these parts of Requester's brief.

13

authorized in the RTKL, an authorization which is subject to the express limitations set forth in that law.

### A. *Appeal of the July Request*

Requester first argues on appeal that common pleas did not address his challenge to the OOR's Final Determination denying his appeal from the City's denial of his July Request. According to Requester, common pleas' 1925(a) Opinion did not mention the Appeal of the July Request, and this case was not completely subsumed into the Appeal of the August Request; therefore, it had to be separately addressed. The City does not respond to Requester's arguments.

The procedural history in this matter reflects Requester's appeals from the OOR's Final Determinations were consolidated for consideration. During proceedings before common pleas on August 3, 2020, Requester stated the "two right-to-know requests [were] for almost the same information, but they sort of overlap each other. One asks for some additional information, additional records." (Transcript at 9.[23]) Common Pleas' December 14, 2020 Order lists the docket numbers for both of Requester's appeals from the OOR's Final Determinations as being covered by the Order. While this Order does not separately address the Appeal of the July Request and Requester's July Request, common pleas was aware this appeal was at issue, it requested "almost the same information" as in the other request per Requester's own statements, (*id.*), and, in fashioning relief, common pleas granted Requester's relief **only** to the extent it ordered disclosure of the SOG Manual with redactions. We read the December 14, 2020 Order as denying Requester's appeal from the OOR's Final Determination for the Appeal of the July Request. In its 1925(a) Opinion, which also lists the docket numbers for both of

---

[23] The Transcript is Item 16 in the Original Record and Bates Numbers 21-27.

Requester's appeals, common pleas ended with a statement that it "declined to disturb the [OOR's] Final Determination regarding [Requester's] remaining [RTKL] Requests." (1925(a) Op. at 13.) Requester's "remaining [RTKL] Requests" ruled upon by the OOR include those at issue in the Appeal of the July Request. (*Id.*) We view this statement to mean common pleas was not disturbing, and was, essentially, adopting the OOR's determinations, which denied Requester's appeal and found the July Request to be insufficiently specific. In reviewing OOR final determinations, common pleas is "allow[ed to] adopt[] the appeals officer's factual findings and legal conclusions when appropriate." *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013).

Concluding common pleas adopted the OOR's reasoning for denying Requester's appeal, we have reviewed that reasoning and discern no error in that determination. Throughout the July Request, Requester asked for the Police Department to:

> RTK[L] Request I. Please email to me copies of all documents in the possession of the [Police Department] that define the following?
>
> > (1) Actions [that] could get a person shot by [Police Department].
> >
> > (2) Actions [that] would get a person shot by [Police Department].
> >
> > (3) Actions by police that would render it legal for citizens to use lethal force against police.
> >
> > (4) Actions by police [that] would obligate citizens to use lethal force against police.
>
> RTK[L] Request II. Please email me copies of all documents in the possession of the [Police Department] that define whether or not it would be legal or illegal for citizens to use lethal force against [Police Department] if the actions taken by police in [the] Lonmin Marikana massacre [sic].

15

Below is a link to the video of the event.

https://youtu.be/d1IBAAH4SzA

[RTKL Request] III. Please provide your personal answers to the above questions, ex [sic] RTK[L] . . .

(Bates Number 65.) In denying Requester's appeal, the OOR credited the affidavits of Police Chief and Records Officer that responding to these requests would require the Police Department to perform legal research and analysis to hypothetical situations, which, the OOR held, rendered the request insufficiently specific.

Section 703 of the RTKL requires "[a] written request [to] identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested[,]" 65 P.S. § 67.703, and if a request requires an agency to determine exactly what provisions of laws might address a request, the request is insufficiently specific, *Askew*, 65 A.3d at 993 (quotation marks omitted). "[A] request necessitating the performance of traditional legal research and analysis to form the basis of a legal opinion makes [a] request unspecific in nature," and a request that "implicitly obliges legal research is not a request for a specific document" but "for someone to conduct legal research with the hopes that the legal research will unearth a specific document that fits the description of the request." *Id.* While Requester purported to seek documents in the possession of the Police Department, of which Records Officer indicated there were none, (Final Determination for the Appeal of the July Request at 6 n.2), Requester "essentially requested the [Police Department] to locate any and all laws and/or legal documents related to" the use of force by and against police. *Askew*, 65 A.3d at 993. To respond to the July Request, the Police Department would not only be required to perform legal research to obtain the requisite legal standards on the use of force, but it also

16

would have to think up innumerable hypothetical situations, or examine a situation on a YouTube video, and apply the legal standards to those situations. As the OOR held, and common pleas did not disturb, such request is insufficiently specific under Section 703 of the RTKL. *Id.* Therefore, we discern no error in the denial of the Appeal of the July Request.

Requester further asserts common pleas erred by ignoring paragraphs 5 through 11 of his Notice of Appeal addressing the Appeal of the July Request. Reviewing those paragraphs and the reasoning adopted by common pleas, we conclude they do not provide a basis for reversing common pleas' Order. The majority of these paragraphs involve Requester's public policy positions, rather than assertions of legal error, (Notice of Appeal for the Appeal of the July Request ¶¶ 5-9), and, accordingly, need not have been addressed, *see supra* pages 12-13. Paragraphs 10 and 11 contend the City had to identify documents which its officers would be directed to review on the use of force and that deposition testimony by a former Police Department Police Chief (former police chief) indicated such documents exist. (*Id.* ¶¶ 10-11 (citing Dep. of Frank V. DeAndrea, Jr., Attachment 16.10 of Requester's Br.).) However, these paragraphs do not reflect what was sought in the July Request. The July Request did not seek use of force policies, but, as discussed above, asked for documents that would answer his specified questions, i.e., what actions could get an individual shot or would justify violence against the police. Responding to the July Request, as the OOR concluded and common pleas upheld, would require legal research and hypothesizing potential scenarios to which that research could be applied, making the request insufficiently specific under Section 703 of the RTKL. Accordingly, these are not reasons to reverse common

17

pleas' Order that affirmed the OOR's Final Determination for the Appeal of the July Request.

## B. *Appeal of the August Request*

Requester asserts several reasons why common pleas erred in resolving the Appeal of the August Request, including challenges to the sufficiency of the Affidavits of Records Officer and Detective Gallagher, common pleas jurisdiction to order redactions, and the completeness of common pleas' decision.

### 1. Were the Affidavits sufficient to support the personal safety exception?

Requester first argues common pleas erred in affirming the OOR's determination because Records Officer's and Detective Gallagher's Affidavits are insufficient to support the application of the personal safety exception. According to Requester, neither Records Officer's nor Detective Gallagher's Affidavit indicates whose personal safety is at risk if the responsive records, SOG policies, tactics, and capabilities, are disclosed without redaction. Those Affidavits, Requester contends, are speculative and conclusory, and, therefore, are insufficient to meet the City's burden of proof. Further, to the extent common pleas relied on the public safety exception found in Section 708(b)(2), Requester asserts this was not raised by the City or Police Department and, therefore, is waived. Even if it was not waived, Requester contends that Records Officer does not have the familiarity with issues of public safety to support her statements in her Affidavit and that the Affidavit is not credible. According to Requester, Detective Gallagher's Affidavit regarding the risks of disclosing these records is "hypothetical storytelling" because most of the materials sought are already released by other law enforcement agencies. (Requester's Br. at 67.) Requester maintains there is a greater substantial and

18

demonstrable risk to the public's safety in maintaining the secrecy resulting from not disclosing the responsive records than in preventing their disclosure, and common pleas erred in not considering the risk posed by this secrecy.

The City responds the Affidavits were sufficient for it and the Police Department to meet their burden of proving by a preponderance of the evidence that an exception under Section 708(b) applied. Even if the Affidavits did not meet that burden, the City argues, common pleas performed its own *in camera* review of the responsive records and made its own determination that the burden of proof was satisfied, at least as to the parts of the SOG Manual ordered to be redacted.

Under the RTKL, the burden is on the governmental agency to prove, by a preponderance of the evidence, the applicability of a RTKL exception. *See* 65 P.S. § 67.708(a)(1); *Pa. State Police v. Kim*, 150 A.3d 155, 157 (Pa. Cmwlth. 2016). "A preponderance of the evidence under the RTKL is 'tantamount to a more likely than not inquiry.'" *Pa. State Police*, 150 A.3d at 157 n.5 (quoting *W. Chester Univ. v. Schackner*, 124 A.3d 382, 393 (Pa. Cmwlth. 2015)). Generally,

> [a]ffidavits are the means through which a governmental agency details the search it conducted for the documents requested and justifies nondisclosure of the requested documents under each exemption upon which it relied []. The affidavits must be detailed, nonconclusory, and submitted in good faith. . . . Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned. . . .

*Off. of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (en banc) (citation omitted); *see also McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 382-83 (Pa. Cmwlth. 2014) (generally, where "no evidence has been presented to show that [an agency] acted in bad faith, the averments in [that agency's] affidavits should be accepted as true"). However, conclusory or speculative statements in an

affidavit, such as in the affiant's professional opinion the disclosure of the information would meet the standard of the relevant exception, are insufficient. *Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 376 (Pa. Cmwlth. 2013); *Harrisburg Area Cmty. Coll. v. Off. of Open Recs.* (Pa. Cmwlth., No. 2110 C.D. 2009, filed May 17, 2011), slip op. at 12-14.

In its initial response to the August Request, the City asserted the records responsive to paragraph 1 were exempt from disclosure pursuant to Section 708(b)(1), which is the personal security exception to disclosure. Although common pleas invoked Section 708(b)(2), the public safety exception, as an additional reason, the City did not raise this exception in its initial response, or in its arguments before the OOR or common pleas. Therefore, we will consider only whether it was error to conclude the City met its burden of proving the application of the personal security exception applied to the redacted portions of the SOG Manual.

Section 708(b)(1)(ii) states "the following are exempt from access by a requester under this act: . . . [a] record, the disclosure of which[] . . . would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. § 67.708(b)(1)(ii). To establish this exception, the agency must establish: "(1) a 'reasonable likelihood' of (2) 'substantial and demonstrable risk' to an individual's security if the information is not protected." *Carey*, 61 A.3d at 373. A "substantial and demonstrable risk" means "actual or real and apparent" and "'[m]ore than mere conjecture is needed.'" *Id.* at 373-74 (quoting *Governor's Off. of Admin. v. Purcell*, 35 A.3d 811, 820 (Pa. Cmwlth. 2011)). However, where there is a heightened risk of personal security concerns, such as in a prison setting, "representations regarding perceived threats to . . . personnel" may be persuasive. *Carey*, 61 A.3d at 374. Thus, in *Carey*, we held

20

records responsive to a request for the identities of prison authorities who authorized transfers of inmates to out-of-state prisons were exempt from disclosure under this exception based on affidavits indicating inmates may retaliate against those officials. *Id.*

In his Affidavit, Detective Gallagher explained, generally, the contents and purpose of the SOG Manual, and how disclosing the SOG Manual could lead to dangers to SOG members' safety. In particular, Detective Gallagher stated:

3. Allowing the public access to the information regarding equipment used by the SOG Unit could lead to suspects utilizing countermeasures which could affect officer safety;

4. For example, if the SOG Unit determined that tear gas needed to be deployed, a suspect with knowledge of the operations manual would be in a position to counter and neutralize the effectiveness of this tool;

5. Also, if the SOG Unit is required to breach a structure, public knowledge of the type of body and/or shield armor being utilized could allow a suspect prepare countermeasures to bypass these safety measures; [and]

6. In today's society with the numerous active shooter/violent encounters facing law enforcement, providing a blue print to the public or steps taken by law enforcement during a SOG Unit encounter, can directly cause harm to a SOG member's safety.

(Detective Gallagher's Affidavit ¶¶ 3-6.) Records Officer similarly explained how disclosing the SOG Manual, which includes SOG Unit tactics, could result in safety risks. Specifically, Records Officer stated:

7. [] Requester is requesting a tactics manual of the . . . [SOG]. The [SOG] operates as a SWAT team, SWAT teams or SOG Units are called in when an incident presents significant risk to law enforcement or the public. The disclosure of the SOG [U]nit's tactical manual could or would result in real damage to an officer's person or the person of those individuals involved in an incident in which the SOG Unit

21

responds. In the case of hostage situations or active shooters, a significant level of precise maneuvering and surprise is crucial to ending situations with minimal harm to officers, the public, and the offender. Dissemination of the SOG Unit's tactical manual would be reasonably likely to result in substantial risk to police officers, the public, and offenders.

(Records Officer's Affidavit ¶ 7.)

Although Requester argues the Affidavits were insufficient for a number of reasons, those arguments are unpersuasive. Requester first asserts the Affidavits failed to identify whose personal security was at risk. It is apparent from the Affidavits that the individuals at risk are the individual SOG members, as well as others who may be involved in the SOG Unit's activities. Requester next attacks the Affidavits as being conclusory or speculative, but such arguments are similarly unpersuasive. The Affidavits provide specific examples and explain the nexus between how disclosing the SOG Manual could place SOG members' personal security at risk, as well as how disclosure could result in a substantial and demonstrable risk of harm to those members. Thus, they are neither conclusory nor speculative so as to render them insufficient. Requester finally argues Detective Gallagher and Records Officer are not credible because, among other reasons, these types of materials are disclosed by other law enforcement agencies and Records Officer lacks experience in law enforcement. Although it decided to perform its own *in camera* review of the documents, common pleas found the Affiants credible, and "[a]bsent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned," *Scolforo*, 65 A.3d at 1103. We discern nothing in the record warranting the questioning of common pleas' crediting the veracity of the Affiants. Ultimately, because a reasonable mind could accept these statements as establishing more likely than not the applicability of the personal

22

security exception, they are sufficient and constitute substantial evidence to support common pleas' decision to review the SOG Manual *in camera* and to order redaction of the documents therein. *Dep't of Env't Res. v. Borough of Carlisle*, 330 A.2d 293, 298 (Pa. Cmwlth. 1974).

Moreover, common pleas did not rely only on the Affidavits because it engaged in its own *in camera* examination of the submitted documents. This *in camera* examination is consistent with that court's de novo standard of review. *Bowling*, 75 A.3d at 466 n.14. Our Supreme "Court has blessed . . . *in camera* review [as a means] to assess the application of various privileges, including where anticipated effects of disclosure are critical elements of the determination." *Am. Civ. Liberties Union of Pa. v. Pa. State Police*, 232 A.3d 654, 669 (Pa. 2020). Upon that review, common pleas concluded the City had met its burden of proving that certain parts of the documents in the SOG Manual were not disclosable under the personal security exception, and, therefore, ordered their redaction. After this Court's own *in camera* review of those documents, we agree with common pleas' determination that it was more likely than not that the contents ordered redacted would create a reasonable likelihood of a substantial and demonstrable risk to an individual's security, specifically, the SOG members, if the information is not protected. The redacted materials relate to the operations, management, training, equipment, and tactics of the SOG Unit. Given the heightened risk to personal security implicated in situations where the SOG Unit is used, the Court accepts not only the "actual or real or apparent" risk to SOG members, but also the "perceived threat[]" to those members as establishing the "substantial and demonstrable risk" necessary to successfully invoke the personal security exception. *See Carey*, 61 A.3d at 373-74. Thus, common pleas' *in camera* review constituted substantial evidence, in that it is

23

"relevant evidence [] a reasonable mind might accept as adequate to support a conclusion," *Department of Environmental Resources*, 330 A.2d at 298, to support the ordered redactions of the SOG Manual.

2. Did common pleas lack jurisdiction to order the redaction of the SOG Manual?

Requester further asserts common pleas lacked jurisdiction to order redaction after its *in camera* review of the SOG Manual because, he believes, the same document was provided in discovery in his federal lawsuit, making it and all of its contents public. Requester asserts the public has the right to review the "complete adjudicative record, which must include the unredacted copy of the responsive records to the RTK[L] Request that are the subject of the instant case." (Requester's Br. at 76.) The City responds that common pleas properly considered and ruled upon the documents at issue relating to paragraph 1 of the August Request and, after engaging in its *in camera* review, ordered the redaction of the portions of the records it found exempt under the RTKL.

Requester's assertion that common pleas could not put the "genie back into the bottle" is not a persuasive reason for reversing. (Notice of Appeal for the Appeal of the August Request ¶ 11.) Requester invoked the RTKL to obtain the record, and the RTKL allows government agencies to assert that certain records (or information therein) are exempt from disclosure and to redact the non-publicly accessible information from otherwise disclosable public records. Sections 706 and 708(b) of the RTKL, 65 P.S. §§ 67.706 (allowing for the redaction of information that is not subject to public access), 67.708(b) (setting forth the exceptions to disclosure that governmental agencies may assert to preclude disclosure). Section 306 of the RTKL provides "[n]othing in this act shall supersede or modify the public or nonpublic nature of a record or document established in Federal or State law, regulation or

24

judicial order or decree." 65 P.S. § 67.306. Requester does not assert the record sought is public pursuant to "Federal or State law, regulation or judicial order or decree," *id.*, such that the RTKL and its limitations on access would be inapplicable. Accordingly, we are not persuaded that common pleas exceeded its jurisdiction by ordering the disclosure of the SOG Manual subject to the redactions authorized by the RTKL.

3. <u>Did common pleas err by not resolving all of the issues raised in Requester's Notice of Appeal of the Appeal of the August Request?</u>

Requester argues common pleas erred in ignoring paragraphs 3, 5-6, 8-16, and 19-21 of his Notice of Appeal for the Appeal of the August Request. As with Requester's argument related to the Appeal of the July Request, many of these paragraphs relate to Requester's public policy positions, rather than assertions of legal error, (Notice of Appeal for the Appeal of the August Request ¶¶ 3, 5-6, 16, 19-20), and, therefore, need not have been addressed. Further, to the extent paragraphs 8-16 challenged common pleas' redaction, that court expressly identified this issue in its 1925(a) opinion as one of the substantive issues Requester raised. (1925(a) Op. at 3.) As for paragraph 21, this references the deposition testimony of the former police chief as to the existence of policies. However, common pleas directed Police Department to submit the relevant policy for *in camera* review, the court examined that policy and ordered the record released subject to specific redaction common pleas believed necessary under the personal security exception. Accordingly, this is not a reason to reverse common pleas' Order.

4. <u>Other issues</u>

Requester further argues the records responsive to paragraphs 5, 7, and 10 of the August Request, which sought, respectively, all warrants that were issued during

the 12-month period before August 21, 2012, and issued after that date in relation to his arrest, (Aug. Request ¶¶ 5, 7), and "all sneak and peak warrants, wiretap warrants, etc." used by Police Department to conduct surveillance of him in the 6 months prior to his arrest and documents that fully disclose those "warrants and unwarranted surveillance activities" during that time period, (*id.* ¶ 10), should be released. According to Requester, sufficient time has passed without action being taken upon the arrest warrants and they should be disclosed. Failure to disclose these records, Requester maintains, violates his constitutional rights under the Fourth and Tenth Amendments to the United States Constitution, U.S. CONST. amends. IV and X, and article I, sections 8 and 25 of the Pennsylvania Constitution, Pa. Const. art. I, §§ 8, 25.[24]

---

[24] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Article I, section 8 of the Pennsylvania Constitution similarly states:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. CONST. art. I, § 8. The Tenth Amendment to the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. Article I, section 25 of the Pennsylvania Constitution states: "To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate." PA. CONST. art. I, § 25.

The OOR found the records responsive to these paragraphs were judicial records in the nature of warrants and not disclosable under the RTKL because they are not financial records and are not records "of" the City. (Final Determination for the Appeal of the August Request at 10 (citing Section 102 of the RTKL, 65 P.S. § 67.102 (defining "record") and *Phila. Dist. Att'y's Off.*, 176 A.3d at 1028-29 (finding sentencing order is judicial record not subject to disclosure)).) Common pleas agreed with this determination because only financial records of judicial agencies are disclosable under the RTKL. (1925(a) Op. at 9-10 (citing Section 304(a) of the RTKL, 65 P.S. § 67.304(a) (limiting disclosure of judicial agency records to financial records)).) We discern no error in these determinations.

Requester invoked the RTKL to obtain the warrants issued both before and after his arrest. He does not dispute the findings that these records are judicial agency records, they are not financial records, and they are not "of" the City. Pursuant to Section 304(a) of the RTKL, "[a] judicial agency shall provide financial records in accordance with this act[.]" 65 P.S. § 67.304(a). Thus, the RTKL does not authorize disclosure of non-financial records of a judicial agency. Requester maintains they are disclosable due to the passage of time, but there is nothing in the RTKL that authorizes disclosure of otherwise non-public records due to the passage of time. Accordingly, these are not reasons to reverse common pleas' Order.

Finally, Requester asserts the records in response to Paragraphs 3 and 4 of the August Request ordered to be disclosed by the OOR must be disclosed following common pleas' Order "because the Chapter 13 Court has completed its judicial review" and the automatic stay should have been lifted. (Requester's Br. at 76 (citing Sections 1301 and 1302 of the RTKL, 65 P.S. §§ 67.1301, 67.1302).) We disagree.

27

Pursuant to Section 1302(b) of the RTKL, an appeal of a final determination to common pleas stays any ordered disclosure pending a decision of that court, 65 P.S. § 67.1302(b), and Section 5105(e) of the Judicial Code, 42 Pa.C.S. § 5105(e), provides for an automatic supersedeas of an underlying order when appeals are filed with this Court. In *Baron v. Department of Human Services*, 169 A.3d 1268, 1275 (Pa. Cmwlth. 2017), we explained stays on disclosure based on an appeal "applies to all records at issue regardless of the basis of the exemption, who asserted it, or who preserved" it and "any attempt to enforce an appealed final determination before disposition of the merits is premature."[25]

## III.    CONCLUSION

For the foregoing reasons, we affirm Common Pleas' December 14, 2020 Order.

---

[25] Requester filed a "Request to Amend Petitioner's/Appellant's Brief with a New Attachment and Request that the Commonwealth Court Take Judicial Notice of City of Hazleton's Filing in Federal Court" (Application), in which he asks the Court to consider, as part of this appeal, a document and arguments that were not submitted to common pleas. Specifically, Requester asks that the Court add a filing by the City in a separate federal court action to the attachments to his brief and to take judicial notice of the City's arguments in that federal litigation, which Requester claims are a "vile threat" regarding what the City and the City's police "officers can get away with," of which the public must be made aware. (Application ¶¶ 5, 7-9.) This Court may not consider materials that are attached to a brief as an appendix, including briefs submitted in other cases, that are not contained in the original record created before common pleas. *Stabler Dev. Co. v. Bd. of Supervisors of Lower Mt. Bethel Twp.*, 695 A.2d 882, 887 n.5 (Pa. Cmwlth. 1997). Thus, the Application is denied, and, consistent with this precedent, the Court will not consider any materials not contained in the Original Record.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean M. Donahue,                          :
                    Appellant            :
                                          :
          v.                              :   No. 1333 C.D. 2020
                                          :   No. 1334 C.D. 2020
                                          :
City of Hazleton                          :


**PER CURIAM**                   **O R D E R**


**NOW**, June 2, 2023, Sean M. Donahue's "Request to Amend Petitioner's/Appellant's Brief with a New Attachment and Request that the Commonwealth Court Take Judicial Notice of City of Hazleton's Filing in Federal Court" is **DENIED**, and the December 14, 2020 Order of the Court of Common Pleas of Luzerne County is **AFFIRMED**.